All right, the next case we'll hear is United States v. Ramirez-Jimenez and Mr. Zymurczak. Ms. Zymurczak, is that close? Good morning. May it please the Court. My name is Amy Zymurczak and I represent Rene Ramirez-Jimenez and I represented him in the trial and as well in the appeal of this case. Your Honor, we are asking that you find the District Court aired in admitting evidence that flowed from an illegal stop in violation of the Fourth Amendment. This evidence included testimony from the officers, two videos which have been submitted to the Court, as well as photographs made from those videos. Your Honor, the case is specifically founded on identification. The identification of Mr. Jimenez was attempting to be completely made and corroborated through this video. What you had is two Hispanic males driving down the road. Officer Schenck makes a stop based on what he describes as a littering violation. That littering violation and subsequent no driver's license, when asked the troopers during trial how long would it take to typically write a ticket for that, they indicated 10 minutes if everything went perfect. What if we consider the possibility that the DEA had probable cause or reasonable suspicion to stop them? In other words, add that on to the traffic violation. The traffic violation, you have a good point. Our jurisprudence in the Supreme Court recently, as you know, confines stops to do the business of the traffic stop and that's your main argument. But I want you to tell me what you think the effect is when the DEA supplied the officers with evidence that these guys were involved in the drug transaction and that they mainly wanted them stopped to find identification. Your Honor, that's my point exactly. The DEA was involved and it's unclear who was doing the directing and to whom it was being directed. Well, the DEA called the police and asked them to stop them. Right. Find the traffic violation, stop them and get their identification. And get their identification. The question is, if we consider the reasonable suspicion or probable cause that the DEA had, do you have any problem with the stop? I do. I don't have a problem with the stop. I have a problem with the length of the stop. I do, Your Honor. Based on, go ahead. It is based on that they suspected that they were involved in criminal activity. They're trying to allay their suspicion of criminal conduct and the Terry territory basically says you can stop as long as necessary to allay your concerns. And if it were just the traffic violation, I think your arguments might be powerful. The question that you don't quite answer is now they have a reasonable suspicion at least, maybe even probable cause that these guys were involved in a drug conspiracy. And I can get to that, Your Honor, and this is how. They had two main objectives. They had two missions or two goals of the stop if we're just focusing on the DEA. One was to identify the passenger and the driver, to identify the two people. That was done six minutes, within six minutes of the stop. But you don't look at the motive of it. Now you look at the objective, which is let's assume they have probable cause to believe that these guys were involved in some kind of drug conspiracy. They hadn't put it all together. At least they didn't know who they were. And they had two controlled buys, as you recall. So now they go into the stop with this reasonable suspicion at least. Aren't they entitled to allay their concerns about the suspicion? I mean they could probably have searched the car without consent based on that and tried to find drugs or money. And just about everything that they did was related to that. And they did address the traffic violation, but you're correct. That could have been taken care of in 20 minutes. I'm sorry, I'm going to actually follow up on that. It's really the same question. I mean if it's reasonable suspicion, an hour is pretty long for a terrorist stop. But if it's probable cause, there's no time limit, right? There's not. What the courts have said and what the courts said, even if there was probable cause, even if they had consent, the scope and the duration still have to be objectively reasonable. And, Your Honor, they could have arrested them. They could not have arrested them. They could not, if they had probable cause. Just assume with me for a minute that there's probable cause that they're engaged in drug trafficking. Then why can't they arrest them? Assuming that there was probable cause, then they could have arrested them. But there was specific direction from the DEA not to arrest them. No. I mean it's objective, right? Once they have probable cause, they could have arrested them. An hour is pretty good compared to that. There's no time limit for a probable cause detention, of which I'm aware. They could have taken them down to the station. Right. And they could have. Questioned them and then released them. Right. And the DEA was not on scene, so the Highway Patrol was working at their direction. And they were specifically asking, do you want us to arrest them? What do you want us to do? I understand, but you keep focusing on the motive and what they were wanting to do instead of the objective standard of how long is a stop appropriate when you have probable cause. And the question is, if they had probable cause, there's not even a time issue. Is there in this case? Right. There is not. But again, I don't believe that the information off of which they were going rose to the level of probable cause. You don't? I don't, Your Honor. DEA thought so. But then they didn't order the arrest and they could have. No, but that doesn't mean anything. Right. They put together the conspiracies. They wanted to get this guy's name and find him in another transaction, pick up one of the guys to implicate this guy. They didn't know who he was. I guess it was the tattoo that ultimately confirmed who it was. But the DEA does, I mean, sometimes they'll go six months after having a controlled buy, which is probable cause for somebody. And then they'll do another controlled buy, and then they come up later with a conspiracy of a period of eight, nine months. And that goes to the probable cause, Your Honor. Talking about the reason, the probable cause that they had, I agree. For the driver, they knew who that was. They had him on audio. They had probable cause to arrest the driver. The passenger, who was my client, had much less involvement, much less articulable involvement. So I don't believe that their information rose to the level of probable cause for Mr. René. Well, all three vehicles were involved. You had the controlled buyer, and then you had the two other vehicles, including the Silverado, which was at every transaction. They surmised that the Silverado was supplying, was the supplier of the drugs, and that the other car, the other fellow who did the actual transaction, was getting his supply there and dividing it up. What was it, methamphetamine? It was, Your Honor. Dividing that up and selling on two different occasions on the same day. And both of those were the driver of the vehicle. They were all involved, obviously. Actually, Your Honor, the testimony from the confidential informant, Mr. Lalo, Lalo said, I asked him specifically, what involvement did René have? And he says, in the record, Your Honor, he said he sat at the table. So he was just there. He sat at the table. That was the testimony of the person who the government was telling to purchase the drugs, is that he was merely present. So I still would argue that there was no probable cause to arrest him. But going back to the length of the search, what they were looking for was— Let's go to your hypothetical alternative. If it's a Terry stop and they had reasonable suspicion, how long could they go or what did they do that overextended the stop? In other words, they basically were determining the scope and trying to lay their concerns on the Terry stop. And they did the search. That takes quite a bit of time. And they did the question, did the checking, and actually they really were sort of lucky in a certain sense that they got the money after they imposed a bond requirement. Well, and, Your Honor, here's my biggest problem. That's why the introduction of the videos is so important. It's because what they did, Your Honor, was extend the search for several reasons. One— Well, they extended it to accommodate the drug transaction. The traffic violation was to make the initial stop. Right. They probably didn't need the traffic violation. They probably could have stopped them also under Terry, but they didn't want that disclosed because they were putting together a case. Right. But within 15 minutes of the stop, regardless of the traffic ticket, within 15 minutes, Trooper Schenck testified, I have been through that vehicle. I can't find anything. But they sent him back, and they're like, did you check under the hood? Did you check? He even described the pristine color of the engine, even at 22 minutes. And it's not just Trooper Schenck, as you can see on the video. Tell me what were they doing during the period of time that you thought was too long. Well, Your Honor, what it appeared that they were doing was had at least seven or eight people going through the truck. And what they were doing was—I don't know. I don't know. It's not that big of a truck cab, so I'm not quite sure what they were doing. But what my client was doing was being stuck on the side of the road and talking to them. My question is, what were the officers doing during the period of time that you thought was too long? Well, there were several officers. Some were—the one who was delaying writing the ticket was delaying writing the ticket. The others were searching. I assume they were searching throughout the vehicle. Well, that's legitimate, right, under Cherry Stop? Well, it is. But the question is, if you're to believe the testimony of the driver, the money was in a bag behind the seat. It doesn't take 50 minutes or an hour and seven minutes or nine trained officers, including two drug-specific trained officers, to find this information. So you're alleging some form of incompetence or— Not necessarily incompetence. I question the credibility of it. Nobody can tell me where it was. Why were they delaying them further? In other words, they didn't have any interest in delaying this. They didn't have further suspicions. They were trying to examine the suspicion that they already had. The normal situation is where you have a traffic stop, and then the officers would like to extend the traffic stop in order to see whether there's drugs involved or something else. Those are the tougher cases. But this case, they could have stopped the vehicle without any traffic violation. They could have called ahead and said, we believe these guys are involved in a drug transaction. We want you to stop them and search the truck and get their identification, but don't arrest them. They could have done that. Right, they could have done that. And that's all they did. They searched the truck. Now, you said they spent too much time searching the truck. That's because they didn't find anything. And when they finally needed the money, the money all of a sudden showed up in a roll, didn't it, out of a cloth? What was it, wrapped in a fish cloth? That's very unclear. We still don't know who located it, if it was a cloth or a sock, and where it was found or how much it was. But to answer your question, Your Honor, they didn't. I understand the hypothetical that they could have just stopped because of their reasonable suspicion, but they didn't. What they did, the avenue that they chose was a traffic stop. Except we're on an objective standard. The question is, that's what Wren teaches, and the question is, did they have evidence to stop them? And I think there was a dual purpose here. They had the traffic violation and then they had the drug transaction. And at that point, there's really no reason for them to extend it beyond the period of time when they satisfied themselves they couldn't find anything. And, of course, they did find something. Ultimately the money was there, but they didn't take that, I guess. And all they really recouped from that was an identification of the man. And I see my time has expired if I may answer. Of course, sure. I think I understand what Your Honor is asking. And my answer would be what they did wrong. I didn't say what they did wrong. I'm trying to say why was it too long. In other words, were they ever doing something extraneous to the effort to investigate the drug suspicion? Well, and Your Honor, the answer to that is unknown. What do you mean it's unknown? I thought you have evidence. They had the cameras and everything else. Right. And when you look at the cameras and you can't really see what they're doing, when asked why did it take so long, I mean they were testing. No, it's not why it didn't take. Were they doing something other than? In other words, the whole deal with the traffic stop in the Supreme Court's case is if the officers are going about the business of investigating the traffic stop, checking insurance, title, open warrants, and this type of thing. There's no real time limit for that. In other words, basically the officers, if they stay about that business, it may take 10 minutes for one officer. It may take half an hour for another. But once they're finished with that business, the stop has to end. Now here we have a Terry stop that involved drug suspicion, and the question is once they're finished with that, if they did something other, if they were looking for a tax violation or something else, now you may have something, but you're not able to allege that what they did during that stop was anything but investigating the drug transaction and the traffic violation. If I may answer, that's correct, Your Honor. They didn't. There's no information in the record that they were doing anything other than that, but the time and the length that it took, we would argue, was a violation. It took way too long. So you have some law that says that when somebody legitimately is investigating the Terry suspicion that there's a minimum time, maximum time? No, there is no law, Your Honor, but what I would argue is that you have to encapsulate these Terry stops within what they are, which are Terry stops in their Fourth Amendment searches, and here we have two people sitting on the side of the road, and if they're not being diligent, there were several, several times that they said that they searched and didn't find anything and didn't find anything and didn't find anything. I do question where this money was found and how it was found, and I just don't believe that the record or the testimony supports that duration for that search. Thank you. All right, Ms. Ewing. May it please the Court. I'm a bit surprised that there is even a question about whether there was probable cause or not, because at the suppression hearing, both parties agreed that there was probable cause, and I quote. Probable cause of a drug activity? Yes, Your Honor. Did you argue that in your brief, that there's probable cause and that takes care of the whole thing? I did. Well, yes, I did, Your Honor. I thought you said there was reasonable suspicion and that takes care of the whole thing. Well, it started out as there was certainly reasonable suspicion, but I think there was also probable cause. What was the reasonable suspicion? They watched a drug deal. They watched a drug deal. No, I thought they stopped the car because of littering. There was testimony from one of the troopers that they stopped it because they were assisting the DEA. No, no, no, no. They were assisting the DEA, but they were tasked with stopping the car for an articulable reason for a traffic violation, weren't they? That was a stop. Well, I think it's the purpose. Did they not bring up littering was the reason they stopped it? That was. That was the reason they told them they stopped them. Exactly. As a driver on the road, sir, I saw litter come from your car. That's a violation of the state law. Therefore, let me see your driver's license and registration. I'm going to call in and make sure you didn't steal the car. I'm going to blind them and write a ticket, correct? That is what happened, yes, Your Honor. And that could have been done in, what, 15 minutes maybe at the most? Well, it could have been, Your Honor, but there was also probable cause, and I think the law states that it's acceptable to stop the objective reason. Did the district court find there was probable cause for the stop? Yes, Your Honor. Okay. You said it was conceded. Well, I believe it was. The government believes it was. It was or it wasn't. Was it stipulated there was probable cause? Did the court find that? Yes, Your Honor. Yes, it could be. Yes, it could be. That's right. It's not true or false. Which one was it? I think it was. Multiple choice question. Your Honor, I believe that it was conceded that it was probable cause, and the reason that I believe that, at the suppression hearing on page 22 of the record, or at the joint appendix, the court questioned. Ms. Zimerchak, your principal argument is not that there was no probable cause to stop the car. You're just saying that the duration of the stop exceeded what was reasonable. Counsel, see, I think we're talking about, I worry that we are talking about two different things. There was clearly probable cause for the stop based on the littering violation, and that is what I understood was conceded. But at least I'm asking you about something different now, which is whether, is it your view that it was also conceded that there was probable cause of drug trafficking sufficient to support the detention? Not necessarily. It's sort of a different question. I totally get that everyone conceded there was littering. Well, I will take a step back on that one and say that I don't know that, no, Your Honor. I don't really even see it argued in your brief. Your brief says there was reasonable suspicion of criminal activity, apart from the littering, that would have justified a carry stop. And I think maybe you did allude in the alternative quickly to the idea that maybe there was also probable cause. But I'd be interested in your position on that. Do you believe that there was probable cause of involvement in drug trafficking sufficient to support a lengthy detention in this case? Yes, Your Honor, because there were two drug buys viewed. It's inconceivable that these two gentlemen in the car were not the people providing the drugs. So, yes, Your Honor, I do believe that there was independent evidence of that, and certainly the collective knowledge of the law enforcement people DA was conveying. Hey, we saw this drug transaction, stop the vehicle, and identify who they are. And then at some point they were saying, see if you can find any drugs or money. There should be money in there. Excuse me, Your Honor. I do want to point out something in the record. There was testimony that the money was wrapped in rags and dirty clothes in a bag, and that is on page 376. Mr. Suarez was the person who testified to that. What was the importance of that? I think they were trying to hide it. That isn't to justify. In other words, the difficulty in this case is getting to the issue. The question is, if there's probable cause to believe there was a drug transaction, and the police officers stopped at the request of the DEA, relying on that probable cause, they told them that these guys were engaged in a drug transaction and we didn't want the car stopped. So they now have objective reason to, they asked them to get a traffic violation, because I think they wanted to conceal the drug investigation at this point and not disclose it. But they had the justification to stop the vehicle for an indeterminate amount of time if there's probable cause of a drug transaction. Yes, Your Honor. If there's a reasonable suspicion, then they could stop the vehicle for a sufficient period of time to allay that concern. And I don't know if you have come to grips with the distinctions and have addressed the facts that support either position. I mean, it may be very well that the officers only functioned there at the stop in connection with the drug transaction, and that they could go so long, there's no time clock put on them. They can allay their concerns in a reasonable manner. And they did, apparently. And the whole thing took about an hour. But if you haven't made clear what your theory of the case is, then maybe it doesn't matter. Maybe your argument is that you went under either, but it might be helpful for us, at least just in considering this. Your Honor, I believe that the probable cause was two things. The knowledge of the drug purchase, the constant surveillance of that, and also the fact that neither – Weren't there two purchases? Weren't there two purchases, drug deals? Yes, Your Honor. One at one and one at three, whatever it was. One occurred and then, yes, they called and made an arrangement for a second one. It sounds to me like they had pretty down and dirty evidence that all those people were involved in some form of drug conspiracy. They didn't have conclusive proof, but probable cause doesn't require that. It was strong. The confidential informant had arranged with his drug dealer to meet at Lowe's. They pulled up at Lowe's. Then the truck with the appellant and the driver pulled up behind them. The drug dealer, Mr. Gaeta, I believe, walked over to the confidential informant's vehicle and said, they haven't divided up the drugs, and so they have to go somewhere to divide up the drugs. That's when the confidential informant and Mr. Suarez and Mr. Ramirez Jimenez followed them to Monterey's. The confidential informant stayed in his vehicle while the others went in. His dealer, Mr. Gaeta, came out and gave him the drugs. All of this was constantly under surveillance. Even after the confidential informant left and met the DEA agent and turned in the drugs, they maintained surveillance. The truck never left Monterey's. Then the confidential informant called and arranged for another deal. All of this was under surveillance. Not only that, but they maintained the surveillance until the traffic stopped. The government believes that that was very, very strong evidence that Mr. Ramirez Jimenez... Did you argue to the court below that there was probable cause of a drug transaction and that all of this fell within the justification of that? I believe Mr. Rowell did. Yes, Your Honor. Where can I find that? Do you happen to have your hand on that? It's right after page 22, I believe. And it does look like the district court, without pausing on it, did say there were two reasons it could stop the car. One was the traffic violation, and the other was probable cause, because of the information passed along by the DEA that there could be drug paraphernalia or illegal contraband in the car. So it does seem as though the district court relied on both without really separating them. I think so. Just assuming for a moment that this is a reasonable suspicion stop and not a probable cause stop, so it's a Terry stop. I mean, an hour is a long time for a Terry stop, isn't it? You have to try to confirm or dispel your suspicion quite briefly. And I mean, I know there's no hard and fast rule, but the ALI says 20 minutes. This is a very long Terry stop. And the judge below, Judge Anderson, recognized that it was getting, or he believed it was getting to the outer limits, but taking the totality of the circumstances... Well... I mean, even if the police officers weren't doing anything they weren't supposed to be doing, when you're under Terry, you're supposed to be doing what you're allowed to do as quickly as possible. And they were searching it, and they didn't find it. And the money was wrapped up in rags and dirty clothes in a bag under the seat. But should the defendant be rewarded for doing a good job of hiding the contraband? Like, is that good a job? 376... Can I ask you another question, just so I'm 100% clear on this? You're not arguing that the reasonable suspicion was enough to get into the truck to search the truck, right? You needed the consent for that? And they had the consent. Right, I just want to be clear, okay. And the judge made a finding on that, that he didn't see any problem with the consent. So there was also consent. There was probable cause. There was consent. And Judge Anderson considered this totality of the circumstances. And as far as why maybe it took a little bit longer, I think there was a misunderstanding about where the men said they lived. There was also no driver's license. They had identifications. And the trooper was checking both of those things. And in the meantime, yes, a search was going on. Are there cases you can point me to for hour-long Terry searches where the defendants are not resisting or being uncooperative? I know sometimes they go for a long time because the defendants are making all kinds of trouble. I believe the McBride case, and if I can, after or maybe tomorrow, McBride. And then there was a Tenth Circuit case that went for two hours and 20 minutes, I believe, that I found. Granted, most of them are a bit shorter. But on those cases, they didn't have probable cause when they stopped the car. They hadn't observed drug deals. Right, but I'd sort of ask you to assume I agree. If there's probable cause of drug deals, there's no problem with the time in this case. But if there isn't, if we're only on reasonable suspicion and we have to squeeze this in under Terry, it's a tight fit. And I think the judge recognized in a case like that it would be. Are you making any kind of a harmless error argument? Yes, Your Honor, I am. In fact, I think that would be the easiest way to dispel this case. We had five people testifying to the identity of Mr. Ramirez. We had Omar Gomez-Suarez, the driver, who had had extensive dealings with the appellant. We had Eduardo Valencia-Galleta, Lilo, who identified him. And that was on page 300, I believe. Then we had three law enforcement people. First, Deputy Cornwall, who was on the initial surveillance of the drug buy. He identified him. And then, of course, two officers. Can we count the two officers? If the argument is that the stop was unconstitutional, do the two officers come in under harmless error? You may not need it. You may have enough without them, but I'm just curious. Well, I think that raises the other question. The judge noted, well, you saw his arms early on in the video. And there was discussion about the tattoo within about 17 minutes of the initiation of the stop. Mr. Ramirez was wearing a tank top. And so his arms were visible immediately. And the whole case centered on identification. There's that principle, right, that a defendant's identity doesn't get suppressed even if it is discovered as a result of a constitutional violation, right? I mean, I know it can be evidence of the identity is suppressed, but not the identity. It's a hard – it involves some fine lines. But you're not relying on that principle here. No, Your Honor. Unfortunately, I'm not. Why not? Pardon? Why not? Because, unfortunately, I failed to research that question and check it out. In other words, because you basically, you may not. I understand she didn't understand that rule. Right, right. Yes, Your Honor. Because they saw him immediately, didn't they? They did. Well, the littering, you have that. You're a passenger, I see you're a passenger, and I remember who you are. And I saw you sitting next to him. Well, end of story, isn't it? The government believes so, yes, Your Honor. You can't suppress yourself. It's like being stopped illegally, but you're really wanted for murder somewhere. You say, oh, you can't get me for murder now because you wouldn't have been able to serve that outstanding warrant. No, you can't. It doesn't work that way. Anyway, go ahead. Yes, Your Honor. And I also believe that the court can make a decision based on anything the court determines is the proper way to decide it, whether either party has raised it or not. But, yes, in the video, the trooper went to the passenger side first because initially the truck pulled up at a guardrail, so it was very close to the highway. And that was one thing I believe that it would take a little longer, that they needed to move the truck where it was a little safer. And within a few minutes, you see Mr. Ramirez Menes get out of the vehicle, and his arms are there. And apparently, from the testimony, these tattoos were quite distinctive. I believe the court understands the government's argument. Thank you very much. Thank you, Ms. Healy. Senator Chen. I wanted to briefly address the harmless error. We would obviously argue strongly against that because the two people who would have a reasonable opportunity to identify Mr. Rene Ramirez, one did not pick him out of a lineup, and Omar, who they rely on, who was the driver for the stop, didn't mark his defendant's 58. That was Tony, who was another drug dealer from Atlanta, but when asked by the government, and who is this on defendant's 58, and he says Rene, and it wasn't Rene. So it's not harmless. This error of identification is not harmless. What they did is relied on this video, and the video was there simply for the stop. I wanted to then go back and address the probable cause. The probable cause to stop was conceded, but what I think your honors are trying to distinguish is the probable cause to arrest. There clearly was probable cause to stop for a traffic violation. We call it generally a Terry stop because it's an administrative type of thing. But there was also arguably probable cause to stop because they had been involved in a drug transaction, and I think from what I perceive is the DEA did not want to announce that as the basis for the stop because that reveals their investigation. They've been tailing these guys and looking at them, so basically what they wanted is a traffic stop for identification, and that's all they want. They want to know this man, if this man was who this man was. And so they got that, but when you analyze this, the stop still was made pursuant to the DEA's probable cause to believe that a crime had been committed. Right, and your honor, quoting Draper v. United States, which is the 1959 Supreme Court case, as I had an opportunity to review this, it says probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonable, trustworthy information are sufficient to them to warn a man of reasonable caution in belief that an offense had been committed or is being committed. And there's a footnote to that that we've held several, several times, is that when police officers inform other police officers about probable cause, that the police officers receiving that information have the same probable cause. I would agree with that, but I believe this court has also held that the questions that have to be asked are, what's the knowledge that they have at that time? It has to be the full knowledge. The guy said, we observed these guys involved in drug transactions. We believe they're involved in drug transactions, and they told the police that. Now, we've observed them. I don't know exactly what the words they told them when they called the police, but it was pretty explicit. It wasn't. If you listen to the video, and you can hear Trooper Melton, who's doing all the communication with the DEA, he's like, well, I don't know how much they bought. What are we looking for? What's the money? What are the drugs? The information that was being relayed, the knowledge that the officers had as to the sufficiency. They had information that the DEA had observed drug transactions going down. Now, the fact that somebody asked for, well, how much, where, which direction did it go? Are we going to find drugs? Are we going to find money? This type of thing. That doesn't take it away from the notion that they received information from the DEA for purposes of the law, a reliable source to the police officers that a probable cause existed to stop the vehicle. Correct, and I would agree that there was probable cause to search, and it's the search, but it's the duration of the search that's the problem, and it's the ‑‑ How could the duration of the search really impact what your problem is? If it took only 15 minutes to just really just process a littering violation, your client's identity is already in scots in the record on the video. What difference does it make? It wasn't the later on type thing that impacts you, does it? It does. Why, why? Because they're the tattoos. The tattoos that are seen on the video at 57 minutes in and 30 ‑‑ You can see the tattoos at five minutes, too. No, you can't. I don't know whether he had his arms folded or whatever it is. No, they're just simply not visible. Not on the video, but to the officers. It's not just a movie we're looking at. We're looking at a human being looking at another human being. Right. His identity is already disclosed within five minutes, even within the parameters of just an articulable reason to stop or probable cause just for a violation. So how do you educate yourself on that? Well, Your Honor, because that testimony, if it were limited to that testimony, the officer who made the stop for that littering, that wouldn't be the problem. But the video is being used and the testimony is being used to corroborate what they claim they saw. I actually want to be real. I'm confused about what it is you're trying to suppress, I guess. Maybe this goes to the harmless error point. I thought the officers come into court and say, forget the tattoos. We saw that guy in that car. What does that have to do with what's on the video at minute 57? What is it you're trying to suppress, the video? We're trying to suppress the video and the identification, Your Honor. I believe that they were different. So on what grounds could you suppress the officers coming in and saying, we stopped that car and the guy over there is the guy who was the passenger in the car? Whether or not they saw the tattoo. I'm just putting the faces together. Right, and if the testimony were limited to that, that provides a lot of room for cross-examination because then it goes to the factors in identifying, how were they able to identify, how long had he had the opportunity to view him, all of the enunciated things that we're supposed to look for. If you were to open the door to all that stuff and say they'd be wrong, how long they had him, you would open the door to that. I'm sorry? Otherwise, if you said, look, I identified him when I first got there, you don't cause that. But how do you know? It was brief. No, it wasn't brief. We kept him there for an hour and a half. Well, but then you have to wonder, and I see my time's about to expire if I haven't answered the question. The officer that comes in and points to them and says that was him was also the officer searching the car, so he didn't see him for an hour. And I wanted to – I understand that the question revolves around this search, but it's so tied into the identification that that's – I think that's where we're struggling with the problem because being at trial and I think reading the transcript and kind of watching the video, you can see that they had those two officers, the two officers with the video cameras, but if it were just their testimony on the identification, that I think could have been more easily challenged. But what they did is they used these still shots and these videos to try to corroborate and to bolster these officers' testimony, and that's where the problem comes in. The bolstering was the other people involved, wasn't it? Did the other people identify your client? That's correct, Your Honor. They did, but they also didn't pick him out of a lineup, and then they also misidentified him in trial. So it wasn't a clear cut. Everybody did? Nobody could say that's him? Everybody could say that's him, but at the same time they also said he was – other people were him or they couldn't pick him out of the lineup. But in the court they couldn't say that's him? They did say that was him. And that's, I think, what's really important with the testimony and the identification from the driver who supposedly spent three years with him because Defendant 58 was put up on the screen, and that was not a picture of the defendant. And it was put up on the screen, and Mr. Raul asked Omar, and who's this? And he says, Renee. And he goes, that guy's sitting right there, and there's a picture up here who's not Renee, and Renee is sitting right here, and he says, yes, that's Renee. Was that a defect for everybody who identified him? No, Your Honor, but when they rely heavily on this information to make their identification, without the video and without these pictures, I think it makes it a much more confusing and arguable issue for the jury. Thank you very much. I notice that you're court-appointed, and I'd like to recognize that. Thank you for the service to the court. All right, we'll come down after. We'll adjourn court, signee die, and then come down to Greek Council. This honorable court stands adjourned, signee die. God save the United States.
judges: Paul V. Niemeyer, Roger L. Gregory, Pamela A. Harris